The first case called, excuse me, oral argument is Golub & Associates v. State Farm. It's allergy time and we're in bloom. I agree, your honor. May it please the court, my name is Dan Heisenstab. I'm representing State Farm Fire & Casualty Company in this appeal. I'm sure you are familiar with the facts of the case and I've read all the briefs. This case really comes down to two issues. The preliminary issue is whether there was a valid lien that Golub & Associates had placed on the insurance proceeds payable to Rosalynn Clayton and I'll address that issue first. And the second, I believe, more important issue actually is what State Farm's obligations were in regard to this agreement that Golub had with Rosalynn Clayton. With regard to the recognition of the lien, Golub has asserted several grounds by which they believe the lien was created. I think some of them can be dismissed rather easily. First of all, they claim that there's a statutorily recognized lien on behalf of public adjusters. They cite a, basically it's just a reference to the word lien in the Public Adjusters Act, which really has no bearing on whether or how such a lien is created. The use of the word lien is used as an example of compensation and the word compensation appears in the language only in the definition of the word public adjuster. The statute says that the public adjuster is someone who assists with the insured for compensation and then lists what it considers to be examples of compensation, one of them being the assertion of a lien. But it says nowhere in the statute that a public adjuster has a lien on any proceeds that an insured may recover from an insurance company. And more importantly, it doesn't have any mechanism for enforcing that lien or notice to the insurance company that there's a lien and what the insurance company would need to do if there was such a lien. And I reference in my brief, I compare that to the Attorney Lien Act, which creates a lien in favor of attorneys and sets out specific requirements that an attorney must follow in order to assert the lien, in order to perfect that lien so that a third party can be bound by that. And when you compare the Attorney Lien Act with the Public Adjusters Act, it's very clear that the Attorney Lien Act intended to create a lien, whereas the Public Adjusters Act makes no such provision whatsoever. The Attorney Lien Act says, right in front of the statute, the attorney at law shall have a lien on any proceeds. I don't get this, so let me ask you this. You say in your reply, the mere mention of the word lien in the definition of compensation is woefully insufficient to create any such rights. It says it in the statute. Compensation, assertion of any lien against insurance proceeds payable. That doesn't mean what it says. But the word compensation is only used to define what a public adjuster says. There's nowhere in the statute that says a public adjuster is entitled to this form of compensation or any amount of compensation. So there's no case that says that doesn't mean what the plaintiff says it means? I can find a case law that says, I'm relying on the actual structure of the statute. Granted, if the statute had said an insurance public adjuster is entitled to compensation for his work, and then it defines compensation as assertion of a lien, then he would have an argument. It doesn't say that anywhere in the statute. The word compensation is only used to define what a public adjuster is. And there's no provision in there that says what type of compensation they're entitled to, or that they are entitled to assert a lien or what the mechanism is for asserting such a lien. And looking at the overall structure of the Public Adjusters Act, it's clear that the legislative intent of that act was to limit the authority and power of the public adjuster, not to provide them any special rights. It requires the public adjusters to be licensed, registered with the state, they pass a written examination, and they're supposed to bond with the director of insurance. They prohibit certain provisions in any contracts with insurers. They prohibit actions with the power of an attorney for an insurer. It's really just the Public Adjuster Act is essentially a laundry list of things that the public adjuster cannot do or limitations on what they can't do when they're representing an insurer. And when you read the act as a whole, it's obviously a legislative intent. It was to limit the authority of a public adjuster, not to grant them any additional rights that they would not otherwise have. So I think that just the mere mention of the word lien in a definition of compensation, which in turn is a definition of what a public adjuster is, is insufficient to create a lien. Particularly when you compare that with the Attorney Lien Act, which states very clearly at the front of the statute, an attorney of law shall have a lien. You see no such language in the Public Adjusters Act. So I believe as far as a statutory created lien, I don't think honestly that Gallup has a right to stand on with regard to that argument. They also argue that there is a common law in favor of public adjusters recognized by the courts, and they rely primarily on two cases, a Lake Shore case and a Heritage Poland Bank case. In neither of those cases did the appellate court actually address the question of whether a public adjuster has a valid lien. And more importantly, the cases don't address what an insurance company's obligation is when it's given notice of such a lien, whether it has a duty to protect the lien or if its duties are primarily with its insurer. You all were notified that the adjuster claimed some or had a contractual relationship with your insurer. Oh, yeah, we don't contest that. And that was what, by letter that the adjuster sent your company? He sent a letter and a fax of the contract. Were you then subsequently notified by the homeowner that she was unilaterally terminating the agreement for the contract or whatever? Well, she said unilaterally. She said that the contract was terminating the contract and any payments she did not want. And that was before you had cut any of the checks? No, actually we had prepared a check with Gallup as a payee, and then we received instructions. You didn't tender it? That wasn't tendered. That was prepared. And then we received the notice from the insurer. Was there any communications back with the plaintiff once you received the letter from the homeowner that the contract was terminated? Did you have any contact, or did your client have any contact with the plaintiff at that time? I don't believe so at that time. The reason why I ask that, were you all noticed that he was going to sue? If that's the case, why didn't you just implead the money to the court? Well, at that point we weren't aware that there was going to be a lawsuit. Well, when you didn't have any contact, what communications, I guess, did your client have with the plaintiff? The plaintiff had learned that the check was reissued. I'm not 100 percent sure. I believe the plaintiff had called our state farms office and inquired about the payment and was told that the check had been reissued. And tendered and sent out? I believe at that point, yes, it was. And then he had, or Mr. Gallagher sent a letter saying, hey, I have this contract that I sent you earlier, so I'm going to claim the lien on all of that. And he should have sent it to me. And as far as interpleading, I mean, that was an option. I acknowledge that was an option we had, that our state farm had at that point. But I don't think there's any law that would require an insurance company or really anyone else to file an interpleader action. Well, if they know that it's not their money, it's going to be divided up or whatever there, get rid of it. Why do they want to have litigation? Why do they want to be in Mount Vernon today? In retrospect, an interpleader probably prevented us being here today. But really the issue here is not whether in retrospect we should have done this. It's really what State Farm did. Was it within the law? Did they perform their obligations as required under the law? And like I said, from my understanding of interpleader action, it's a permissive action. I don't know of any situation, and your honors may have an example, but I'm not aware of any situation where an interpleader is required where a person involves fines. Well, was your fine on notice that the plaintiff was getting ready to sue the homeowner prior to you all tendering the check? Not that I'm aware of, your honor. The record doesn't show that? I didn't see anything in the record that showed that there was any. Would that make any difference? With regards to State Farm's obligations? Yes. In this case here? I don't think it would make any difference with regards to their obligations. I mean, at that point it may have been advisable to interplead the fines, but as I said, I don't believe there was ever a situation where they were required to interplead fines. I think that's just a permissive action that they could have taken for their own benefit, and conceivably that would have probably prevented us from being here today. But the issue is not in retrospect whether we should have done that. The issue is did what State Farm did, was that authorized by the law? Did they act properly in what they did? Did they act improperly when they first issued the check with the Golob and associates on the pail? No, because at that point it was understood, at least with State Farm, that there was an agreement between Golob and Clayton that they were, you know, that by virtue of the contract, Clayton was allowing us to do that. And it is the standard practice of State Farm when they're, you know, when a public adjuster states that I have a contract and they're, that we issue, we put the public adjuster on the check as a courtesy to the insurer basically. But in a situation where the insurer has specifically told us that the contract is terminated, I want all payments made directly to me. You know, then you're in a situation where you're weighing, you know, what are my obligations to my insurer? What are my obligations to the public adjuster? You wouldn't know if they had made an agreement that I'll just pay you directly. I'll pay. The insurer could have said, here, I'll give Golob and associates a check, and then you don't have to. But you didn't know that, did you? We didn't know the specifics of what the, how the relationship broke down. And really, you know, at that point, we're basically, which is really the crux of my argument, is that at that point when Rosalyn Clayton comes to State Farm and says, Look, I am terminating my contract with Golob. I'm unsatisfied with their services. I don't know if the contract was breached on the part of Golob. You know, that's an issue between Golob and Clayton as to whether there was a breach. But at that point, she is instructing State Farm to issue all payments directly to her. And then after the check was re-tendered with her name on it, we have an instruction, virtually an instruction from Golob saying, No, Golob needs to be included on the checks because we have a disagreement with Clayton. So we have a situation where the insurer is telling us one thing to do one thing, and the public adjuster is telling us to do another thing. And as I said, that's really the crux of my argument. Whose duties, or to whom does State Farm have its duties? It's very clear in my mind that the duty that State Farm has is to its insurer. You know, for one, there's a contractual relationship between State Farm and Roslyn Clayton. State Farm agrees to pay any direct damage from an accidental fire. What duty did State Farm have to put the plaintiff's name on the first draft? I don't believe it had a legal duty to it. I believe it was a courtesy because of the, you know, essentially when Golob submitted that agreement, or submitted a written agreement in ad with Clayton, and Clayton also had sent a letter, I believe it's in the record, saying that I've hired Golob as my public adjuster. Right, but, I mean, why would they put the name on there? Well, it's a courtesy to both parties. A courtesy?  They're not legally bound, right, to do that? No, they're not legally bound. Even if there was, even if... Are the insurers going to be that courteous, I guess? Well, let me put it this way. Even if there was a legal obligation at that point, any such obligation would have been... Was there a legal obligation at that point? I don't believe so. I believe, you know, in our position that it was just courtesy, but I'm saying if we accept that there wasn't a legal obligation because both sides had said, you know, I recognize, we're recognizing this contract, we're recognizing that Golob should be paid from the funds, then at that point, you know, that changes when Clayton comes up to us and says, no, that's terminated. I'm not dealing with Golob anymore. I want you to issue the checks directly to me. Then you have a situation where State Farm has to decide, is it going to honor the wishes of its insurer or is it going to honor the wishes of the public investor? And if you compare the two, there really is no comparison. The insurer, the State Farm has a contractual obligation to the insurer to pay all money, you know, all damages that were caused by the Jacksonville Fire, whatever the reasonable repairs would be. There was some issue as to what that amount was. To the extent there was an undisputed amount, that was, they had to pay that to the insurer. And particularly, the regulation side of my brief, Part 919.50, Subsection A, of the insurance regulations require that when there's an undisputed amount, that amount has to be paid to the insured within 30 days. So there is a legal, you know, which has, you know, said the regulation as far as the statute. So there is a legal obligation in addition to the contractual obligation for State Farm to pay Rosalynn Clayton the money, the undisputed amount of her claim. And by issuing a check which has another payee on it, it essentially is preventing her from accessing those funds because she would then have to work out whatever controversies she had with GABA before she could have access to those funds. The Charter Board order didn't say it was a statutory lien or an equitable lien or a common law lien. It just said pay that for 10%, right? Correct. The order was, you know, it didn't go into any details as to what the grounds of the judge's decision was. So, you know, again, we come down to the comparison between the obligations to the insurer, the obligations to Golub. You know, State Farm had no contract with Golub. They have no statutory duties to Golub and no case law stating that it has the obligation to pay Golub or recognize Golub's interest or any lien that it claims it has on any of the proceeds. So basically what Golub is saying is that State Farm should have ignored its contractual obligations to its insurer, ignored the insurance regulations which require payment within 30 days of the undisputed funds. Their argument basically is saying that this agreement supersedes your other contract and your statutory regulatory obligations to your insurer. And absent any case law that says that or any other statute that says that we have to protect the public adjustment over and above what our duties are to the insurer, I believe State Farm made the correct decision here and honored its duties to its insurer and not duties to a party within which it had no contractual obligation or no statutory obligation. Any other questions? I don't believe so. Thank you, counsel. Thank you. Counsel? May it please the Court, counsel? My name is Chris Colbert. I represent the plaintiff in this matter, Golub and Associates, whose agent is Ace Hart who is also here this morning. And I think it's important to start off when we discuss this case to explain what a public adjuster is because it gets to the root of how they get paid. Public adjuster helps people who have losses that have insurance. And typically these are catastrophic losses like a home fire that happened in this case. Usually or oftentimes the people are poorer, like Rosalynn Clayton was in this case, but people need help processing those claims, boarding up the houses, making sure they're paid the right amounts of money for their loss, that contractors, the right contractors, do the right job maybe to rebuild the house. A public adjuster steps in to help consumers do that. But because consumers often don't have funds to pay lawyers or adjusters, the statute here specifically allows public adjusters to be paid a contingency, or be paid from a lien, and typically they're paid a contingency fee so that consumers can access their services much like attorneys are, at least plaintiff's attorneys. And in this case that's what happened. A contract was issued. The contract specifically said that Rosalynn Clayton agreed to pay 10 percent to Golub and Associates and agreed to pay on receipt of drafts. And she assigned all those monies due for that 10 percent and her agreement. So she has a contract and she breached it, and that's an adequate remedy at law, isn't it? She breached it. Is there an adequate remedy at law to go after Ms. Clayton? Certainly there's the right to go after Ms. Clayton for breaching her contract. That's true. Whether there's any recovery is a different matter because funds were expended. But also we don't need to get there. And if the court's referencing, I think it's a case, I think it's LaSalle, it's the case cited by the defendant, and that's talking about equitable liens, what the court in that case said is if you don't have a written contract or an assignment, then you can look at other factors on whether or not to do an equitable lien, such as no adequate remedy at law. So respectfully, there doesn't have to be no adequate remedy at law. For an equitable lien, if there's a contract such as here, that suffices. In addition, there's other factors that would allow an equitable lien, even if there wasn't a written contract, such as the custom of trade and usage that exists here. And that was decided on. We mentioned, I think, the Deitchman case that states the same thing. And also there's another case that mentions that that I'll get to briefly. But there's three types of liens that we have in Illinois, statutory liens, common law liens, and equitable liens. And seemingly all three can apply here. Statutory, because the statute, as this court has seen, states that compensation can include assertion of any lien against insurance proceeds. And, again, there's no other way to read that. The statute specifically says that that's how public adjusters can be paid. I found it interesting to hear State Farm argue that this is somehow a limitation. Clearly, that's not a limitation. It's an expansion that states they can be paid that way. And it states that. And, again, the reason for that is to allow consumers, allow public adjusters to work with consumers and allow them to get paid. It is true that this is not in Chapter 770 of the code. But, again, there's no requirement that all liens do have to be in Chapter 770. In fact, there's nowhere in 770 that doesn't state that the list of liens there, those lien acts, is exclusive by any means. I mentioned two cases that support our position, Heritage, Pullman versus State Farm, and also the other ones, the Lakeshore Racquet Club. And Heritage is the one that has the most relevance here. Ironically, it involves State Farm again. But the contract language used in Heritage is similar to the contract language here, a 10 percent sort of contingency fee agreement. But the court recognized that the language in Heritage, or in used, could create a lien. And that lien could be adjudicated by the trial court. So a couple things become relevant with that case. One, I want to point out that State Farm and Heritage honored a public adjuster lien. And, again, that goes for the custom of usage and trade in the trade that State Farm has had. And I want to point out the same for the Lakeshore Racquet Club case. Because, again, it shows that the fireman's fund, the insurer in that case, honored a public adjuster lien. And that's what's important. It's part of the custom here. And that leads us to whether or not there can be a common law lien. So I believe there's a statutory lien, but there can also be a common law lien. The Deichman case we cite in our brief is a 1947 case that talks about how liens existed in common law. And then states that liens can also arise by statute, contract, or by uses of trade and commerce. And, again, I think it's been established here that the usage of trade and commerce existed. And then the third part is the equitable lien. There can be equitable liens in order to prevent- Let's go back to Heritage for a minute. That was reversed and remanded, but I think it wasn't on the issue of the lien. It was reversed on whether the work was adequate. Is that correct? Correct, in order so they could adjudicate the lien. So the appellate court in that case recognized there was a lien that had to be adjudicated. I believe in the language they even say there's this contract that allows this right. Although, to be candid, I don't think the court got into a discussion about- I don't think the issue of whether or not it was valid ever even came up. I would liken it to sort of arguing that the sun is orange. It's so obvious you don't really go over it. But equitable liens really are remedies for debts. And there's a good Fourth District case called Lusader v. Walmart that goes over equitable liens and how they can be done. Now State Farm here recognizes equitable liens. And they cite three cases, starting with, I think, Clarendon Hills, that says, no, you can't have equitable liens in these sort of cases. The difference with those cases and what we have here is the language in the contract. So here there was a fund that was pointed out by GOLA and by Ms. Clayton, the proceeds that she received. And she also made an assignment and assigned her right, assigned at least 10% of that, to GOLA to collect. And that's what differentiates most of those cases is that assignment. I would also point out most of the cases cited by State Farm deal with purchased mortgage contracts, foreclosures, and condemnations that don't even have notice to the other parties. So they're pretty much off point. But the other thing I want to point out, Your Honors, is that they also cite that you can't have contingency fees to create these equitable liens and equitable assignments. But, again, that's not true either. There are many cases where those have been allowed. This court allowed it in a case called Home Federal Savings v. Cook, which is a Fifth District case. They were also allowed in Lusato v. Walmart and also a Central Illinois Federal Court case of McKeith Burger. So, again, it's pretty clear that these liens can't exist. It's clear that State Farm should have honored the lien as they recognized it first. I do want to quickly address a couple of the other arguments that State Farm raised. One is that if they had to honor the lien, they would violate their duty to the insurer. This argument really doesn't stand any muster. As attorneys, we all have medical liens, public aid liens, Medicare liens. We always have to honor those, as does State Farm. We can't ignore them because we have fiduciary duties to our insurers. Liens have to be honored. When did your client become aware that State Farm wasn't going to honor your client's claim to some of the proceeds? When they had contact with State Farm, and I don't recall the specific date, Your Honor. I think it was January. Before your firm got involved in the litigation? It was before we got involved. They got notice that a check was issued or being issued without their name on it. I believe public adjusters have this constant almost back and forth with the adjusters to make sure the claim is moving and things are happening. Then they got notice that a check was issued without their names on it, and then they protested. And then they what? Well, they protested to the adjuster, and then that ensued after that. Did you sue the homeowner also? Initially we did, Your Honor. And then it was dismissed? It was. Is there a reason why it was dismissed anywhere in the record? The reason is not reflected in the record, Your Honor. Are there any other questions? I don't believe there are. Thank you, Counsel. Sit down. Thank you. Counsel? Thank you, Your Honor. I just want to address some of the issues that Mr. Kolker raised. Or Mr. Kolker raised, I'm sorry. First he talks about the purpose of a public adjuster and how they represent typically poor people and the mechanism for which they normally get paid. And I can see he makes good arguments. The problem is that this is really not the forum to make those arguments. That's something that I believe the legislature should address as to whether they want to provide certain powers or protections to public adjusters as they have with medical providers, as they have with attorneys, as they have with, you know, in the realm of mechanics lanes. So I think that there's an easy distinction there is that the legislature has given, you know, these big classes of special rights, but they have not chosen to give them to public adjusters. And I believe that's even emphasized by the fact that they have a public adjuster's lien in that statute, or I'm sorry, a public adjuster's statute act. And in that act they do not provide any powers to the public adjusters as they do to attorneys, to medical providers, to the realm of mechanics lanes. That goes to my second point. He criticized my argument as to whether I need to protect my insurer over the public adjuster. He drew an analogy to Medicare leave, Medicaid leave. Those are statutes where you protect it. There's a statute that says you have to protect Medicare, you have to protect Medicaid when you make settlements, attorneys as well. What he's talking about is there's an act that says an attorney shall have a lien. So obviously we're talking about a statutory obligation that an insurance company would have to follow in order, you know, when making such payments. Since there's no statutory authority mandating that an insurance company protect a public adjuster's lien, it's duties to its insured supersede anything that may arise from a separate contract the public adjuster had with the insured. He mentions heritage and how it did involve State Farm. I think the distinction between heritage in this case is that, at least in the record of heritage, I don't know any facts of it aside from what's in the appellate opinion. But there's no mention that the insurer in that case instructed State Farm not to include them on the check. From what I could tell from the facts of heritage, the dispute did not arise until this check was tendered. And the insurer chose to challenge that by way of an adjudication of a lien. And in fact, the court said that they could challenge that amount based on the work that the public adjuster did. So in other words, the public adjuster didn't have an automatic right to those funds by virtue of this agreement, even though it said that she was assigned the rights. It still had to show that they had an obligation or that they performed their end of the contract. So in this situation, State Farm would have had to dig into the underlying dispute and say, well, who do we think is right? Do we think Hoyt is right? Do we think Gallup is right? Does Clayton have a good point? And really, there's no authority that says State Farm has to do that. State Farm's obligation is to its insurer. And that's what's stated in the regulations. That's what's stated in its contract with this insurer. And one other point I had mentioned in my brief, which I wanted to bring up, he touched briefly in his argument about the notice issue. And if the court were to find in this case that State Farm was obligated to protect the public adjuster in this case, it would put the public adjuster on a higher plane than it would an attorney. Because in this case, you know, limited to the facts of this case, but the public adjuster provided notice of his quote-unquote lien through regular mail and fax only. The Attorney's Lien Act is clear that any assertion of a lien, a notice of a lien to a third party must be made by certified registered mail. So if Gallup, in this case, was not a public adjuster, but it was Gallup and Gallup Law Firm, and they asserted that they sensed they farmed something in regular mail, the Unger case, which I cited in my brief, states that that is not a valid notice of a lien. Thank you, Counsel. Thank you. We appreciate the briefs and arguments of counsel, and we will take this case under advisement. Court will be in a short recess.